## JOHN M. GIOVANELLA *vs.* CONSERVATION COMMISSION OF ASHLAND.

Middlesex. September 5, 2006. - November 28, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Constitutional Law,* Taking of property. *Due Process of Law,* Taking of property. *Zoning,* Wetlands.

A civil action involving a claim of a regulatory taking was ripe for adjudication, where the defendant town conservation commission reached a final decision regarding the plaintiff's land, and where the plaintiff had exhausted his available State remedies. [723-724]

Discussion of the law of regulatory takings where the burdens placed on land are so onerous as to require compensation. [724-726]

This court concluded that in an action alleging a regulatory taking, the extent of contiguous commonly-owned property gives rise to a rebuttable presumption defining the relevant parcel, but the presumption may be overcome by factors such as the use of noncontiguous land for a single unified economic purpose or the treatment of contiguous parcels as separate, distinct economic units. [726-731]

The judge in a civil action properly concluded that the defendant town conservation commission's denial to the plaintiff of an order of conditions for his property (because construction of a home on the property would violate a local wetlands protection bylaw) did not constitute a regulatory taking in violation of the Fifth Amendment to the United States Constitution, where the plaintiff presented insufficient evidence to overcome the rebuttable presumption that his two contiguous parcels should be treated as one unit [731-733], and where the wetlands protection bylaw did not impermissibly interfere with the plaintiff's reasonable investment-backed expectations, given that the economic impact of the defendant's action was not significant enough to rise to the level of a taking, and the character of the defendant's action did not support the conclusion that application of the bylaw was a taking [733-736].

CIVIL ACTION commenced in the Superior Court Department on September 27, 2002.

A motion for partial summary judgment was heard by *S. Jane Haggerty,* J.; a subsequent motion for summary judgment was heard by *Bonnie H. MacLeod,* J., and entry of final judgment was ordered by her.

The Supreme Judicial Court granted an application for direct appellate review.

*J. David Breemer*, of California, for the plaintiff.

*Joseph M. Hamilton* for the defendant.

*Michael E. Malamut & Martin J. Newhouse*, for New England Legal Foundation, amicus curiae, submitted a brief.

SPINA, J. This appeal asks us to define the "relevant parcel" in a regulatory takings analysis. The plaintiff, John M. Giovanella, owned two contiguous lots in Ashland. One of the lots contained a house. Giovanella sought an order of conditions from the defendant, the conservation commission of Ashland (commission), that would allow him to build a house on the other lot. The commission denied his request because construction of the house would intrude into the twenty-five foot buffer zone around a wetland on the lot, in violation of a local bylaw. Giovanella filed suit in the Superior Court, seeking annulment of the commission's decision and, alternatively, damages for what he alleges on appeal was a regulatory taking under the Fifth Amendment to the United States Constitution.[1] On Giovanella's motion for summary judgment, the judge concluded that Giovanella failed to show that the decision of the commission was arbitrary or capricious. That portion of the judgment has not been appealed. The judge also ruled that the relevant parcel for purposes of the takings analysis was the entire parcel that Giovanella purchased, and not just the lot he sought to develop. The judge concluded that Giovanella had not shown sufficient economic harm as a result of the commission's decision, and had not shown a reasonable investment-backed expectation that he would be able to develop the lot in question. Based on these conclusions, a second judge granted the commission's subsequent motion for summary judgment. Giovanella appealed the ruling. We granted Giovanella's application for direct appellate review, and we now affirm.[2]

1. *Background.* On March 31, 1999, Giovanella purchased

---

[1] The plaintiff, John M. Giovanella, does not argue that the application of the bylaw resulted in a taking under art. 10 of the Massachusetts Declaration of Rights. We analyze his claim only under the Fifth Amendment to the United States Constitution.

[2] We acknowledge the amicus curiae brief submitted by the New England Legal Foundation.

land in the town of Ashland (town) for $130,000. The property, which consisted of 34,589 square feet of land, had a small wetland in the northwest corner, and a single family residence on the southern portion. Between three and six months after buying the property, he learned that a previous owner had divided the property into two lots of nearly equal area. The lots were assessed separately for tax purposes, and had different addresses. The house was situated on lot 2, and the wetland on lot 1. When he learned the property had been divided, he decided to build a new house on lot 1, into which he planned to move.

In December, 1999, nine months after Giovanella purchased the property, the town adopted a wetlands protection bylaw. The bylaw prohibited all work or disturbance within twenty-five feet of any wetland area "unless the applicant provides information and evidence deemed satisfactory by the [c]ommission that the work to be performed sufficiently protects or enhances wetland interests." The wetland in the northwest corner of lot 1 was protected by this bylaw.

Sometime before March 21, 2000, Giovanella applied to the zoning board of appeals of Ashland (board) for a variance that would allow him to build a house on lot 1, an undersized lot. The board determined that the lot was grandfathered, and issued a special permit to build, subject to certain conditions, including a request that Giovanella obtain an order of conditions from the commission to ensure that all requirements of the wetlands protection bylaw would be satisfied. Giovanella does not appeal the special permit and its attendant conditions.

He proceeded to file with the commission a notice of intent to build a house on lot 1. The commission held hearings on April 9, 2001, to discuss the impact of construction on the wetlands buffer zone within lot 1. Robert Gemma, Giovanella's civil engineer, appeared at the hearing to discuss the plans he had prepared for construction of a house on the lot. Construction would encroach on the buffer zone temporarily, although it would not encroach on the wetland itself. The completed house would not encroach on the buffer zone. Gemma told the commission that he could not move construction any further from the buffer zone, and that to deny the plan he presented would deny use of the whole property. On April 23, 2001, in response

to the commission's concerns with the plan, Gemma presented a second plan that incorporated mitigation measures designed to counteract any damage done to the wetlands during construction. On May 7, 2001, citing concerns with pollution and loss of wildlife habitat resulting from the disturbance during construction, the commission denied Giovanella's application for an order of conditions.

On June 19, 2002, more than one year after the commission had rejected his application for an order of conditions, Giovanella sold lot 2 for $319,900. While lot 2 was on the market, at least one person expressed interest in buying both lots 1 and 2 together. Nevertheless, Giovanella decided to sell lot 2 separately in the hopes of some day being able to build on lot 1. After the sale of lot 2, Giovanella hired an appraiser who concluded that by itself, lot 1 had no value.[3]

2. *Ripeness.* It is necessary to begin with a discussion of ripeness. A regulatory takings case becomes ripe for adjudication only after two requirements are satisfied. First, an owner must allow the responsible government entity to reach "a final decision regarding the application of the regulation to the property at issue." *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186 (1985). Second, an owner must exhaust available State remedies before seeking relief under Federal law. *Id.* at 194. We conclude that the commission did reach a final decision regarding Giovanella's land. During the proceedings in front of the commission, Gemma followed his initial plan with a revised plan that attempted to satisfy the commission's requirements. He also told the commission that the house could not be moved any further from the buffer zone. After the commission rejected Gemma's second plan, and after Gemma explained that the plans provided the only possible use of the property, the commission had an opportunity "to exercise [its] full discretion" as a land-use

_____

[3]Giovanella's appraiser determined that lot 1 might have had some value to an abutter were it not for the tax liability that the town imposed. The tax liability was based on the town assessor's determination that lot 1 was developable. Of course, the town may not continue to tax lot 1 as developable land while simultaneously denying any opportunity to build on it. The appraiser concluded that should lot 1 be reassessed as an undevelopable lot, it would have a value of between $3,000 and $8,000 to an abutter.

authority. See *Palazzolo* v. *Rhode Island*, 533 U.S. 606, 620 (2001). It used that discretion to reject Giovanella's plan.

We also conclude that Giovanella has exhausted his available State remedies. He followed the commission's rejection with an appeal to the Department of Environmental Protection and he sent a letter to the chairman of the commission seeking reconsideration of the proposal. There were no other administrative remedies provided for in the wetlands protection bylaw or in the State wetlands protection act that authorized the bylaw. See G. L. c. 131, § 40. Some Federal courts have required litigants to pursue an "inverse condemnation" proceeding under State law before considering State remedies exhausted. See *Pascoag Reservoir & Dam, LLC* v. *Rhode Island*, 337 F.3d 87, 93 (1st Cir.), cert. denied, 540 U.S. 1090 (2003); *Gilbert* v. *Cambridge*, 932 F.2d 51, 65 (1st Cir.), cert. denied, 502 U.S. 866 (1991). In this case, an inverse condemnation claim would take the same form as the claim with which we are presented here. We see no reason to require Giovanella to make his claims first under the heading of "inverse condemnation" before considering the identical claim under the heading "regulatory taking."

3. *Regulatory takings law.* The Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." This protection is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong* v. *United States*, 364 U.S. 40, 49 (1960).

Giovanella argues that the burdens placed on his land by the town's wetlands protection bylaw are so onerous as to require compensation under the takings clause. The United States Supreme Court has recognized this form of "regulatory takings" claim since its 1922 decision in *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 (1922), in which Justice Holmes laid out his "storied but cryptic formulation, 'while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.' " *Lingle* v. *Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005), quoting *Pennsylvania Coal Co.* v. *Mahon, supra* at 415.

Identifying when a regulation has gone "too far" is a fact-sensitive inquiry. See *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, 535 U.S. 302, 326 (2002); *Penn Cent. Transp. Co.* v. *City of N.Y.*, 438 U.S. 104, 123-124 (1978). The Supreme Court has explained that there is no "set formula" for when compensation should be made, but that the determination rests on "the particular circumstances" in each case after "an essentially ad hoc, factual inquir[y]." See *Penn Cent. Transp. Co.* v. *City of N.Y.*, *supra* at 124. In *Penn Cent. Transp. Co.* v. *City of N.Y.*, *supra*, the Court provided three factors to guide this inquiry: the extent to which the regulation interferes with the owner's distinct investment-backed expectations; the economic impact of the regulation; and the character of the government action. These three factors have served as the principle guidelines for regulatory takings claims. *Lingle* v. *Chevron U.S.A. Inc.*, *supra* at 539. They are designed to measure the "severity of the burden that government imposes upon private property rights." *Id.* at 539.

In *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1017 (1992), the Court established a limited exception to the use of the *Penn Central* factors in the "extraordinary circumstance when *no* productive or economically beneficial use of land is permitted" (emphasis in original). A regulation that causes an owner to lose all economically beneficial use of a piece of property is a taking per se. *Id.* at 1019. The *Lucas* categorical rule is limited to those "relatively rare situations" in which the regulation causes an owner to "sacrifice *all* economically beneficial uses" (emphasis in original). *Id.* at 1018, 1019. The Court has said that the *Lucas* rule would not apply even if "the diminution in value were 95% instead of 100%." *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, *supra* at 330.

In order to measure the economic impact of a regulation under either the *Lucas* or *Penn Central* decisions, we must first define the unit of property on which that impact is to be measured. We then compare the value of that property before and after the alleged taking. The heart of both tests becomes defining the unit of property at issue, often called the "relevant parcel." When a court considers a large piece of land of which

only a small portion has lost value due to regulation, it is less likely to conclude that a taking has occurred. If a court considers a smaller parcel of land, most of which has been affected by a regulation, then the economic impact is more likely to appear large enough to constitute a taking.

This has come to be known as the "denominator problem," and it has proved to be a hard problem to solve. The denominator problem has become an even more critical issue since the creation of the *Lucas* categorical rule. If a landowner is able to define the "relevant parcel" as only that part of land rendered valueless due to regulation, then the owner is automatically entitled to compensation for the value of that land. See *Loveladies Harbor, Inc.* v. *United States*, 28 F.3d 1171, 1181-1182 (Fed. Cir. 1994) (severing twelve and one-half affected acres from larger 250-acre parcel and finding categorical taking). At the same time, the benefits of an easily applied, bright-line rule are lost because the *Lucas* categorical rule "does not make clear the 'property interest' against which the loss of value is to be measured." *Lucas* v. *South Carolina Coastal Council, supra* at 1016 n.7.

The Supreme Court has provided only minimal guidance for resolving the denominator problem. It has stressed that we are to use the "parcel as a whole" for a takings analysis. *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency, supra* at 327; *Penn Cent. Transp. Co.* v. *City of N.Y., supra* at 130-131. Repeated admonitions to use the "parcel as whole," however, do little to define the contours of that whole parcel in any particular case.

4. *Defining the denominator.* Definition of the relevant parcel, like the rest of the regulatory takings law, is a fact sensitive inquiry. See *Loveladies Harbor, Inc.* v. *United States, supra* at 1181 ("Our precedent displays a flexible approach, designed to account for factual nuances"); *Ciampitti* v. *United States*, 22 Cl. Ct. 310, 318 (1991) (listing factors contributing to defining relevant parcel); *K & K Constr., Inc.* v. *Department of Natural Resources*, 456 Mich. 570, 580, cert. denied, 525 U.S. 819 (1998) ("Determining the size of the denominator parcel is inherently a factual inquiry"). To determine the extent of the unit of property to be scrutinized under a regulatory takings

analysis, courts look to those factors that "identify the parcel as realistically and fairly as possible, given the entire factual and regulatory environment." *Ciampitti* v. *United States, supra* at 319.

The intuitive starting point for determining the boundary of the property under a takings clause analysis is to consider as one unit all contiguous property held by the same owner at the time the taking occurred. See, e.g., *Forest Props., Inc.* v. *United States,* 177 F.3d 1360, 1365 (Fed. Cir.), cert. denied, 528 U.S. 951 (1999) (declining to sever contiguous parcels, one submerged and another above ground); *American Sav. & Loan Ass'n* v. *County of Marin,* 653 F.2d 364, 372 (9th Cir. 1981) (considering contiguous parcels one unit unless landowner met burden showing that development plans for each would be zoned differently); *Ciampitti* v. *United States, supra* at 320 (combining noncontiguous property in relevant parcel where intervening linking lots also owned by same developer); *K & K Constr., Inc.* v. *Department of Natural Resources, supra* at 581 ("contiguity and common ownership create a common thread tying these three parcels together for the purposes of the taking analysis"); *Bevan* v. *Brandon Township,* 438 Mich. 385, 395-396, amended 439 Mich. 1202 (1991), cert. denied, 502 U.S. 1060 (1992) (considering contiguous lots under common ownership "as a whole" for takings analysis); *Zealy* v. *Waukesha,* 201 Wis. 2d 365, 380 (1995) (declaring relevant parcel "clearly identified" as 10.4 contiguous acres owned by plaintiff). Following this logic, courts often begin by treating noncontiguous parcels or contiguous parcels with separate owners as separate units. See, e.g., *Gove* v. *Zoning Bd. of Appeals of Chatham,* 444 Mass. 754, 762-763 (2005) (beginning analysis with individual lot before suggesting inclusion of noncontiguous property); *Lopes* v. *Peabody,* 417 Mass. 299, 300-301 (1994) (considering one lot in takings analysis but not noncontiguous parcels purchased at same time); *Palm Beach Isles Assocs.* v. *United States,* 208 F.3d 1374, 1381, aff'd on rehearing, 231 F.3d 1354 (Fed. Cir. 2000) (severing fifty acres from larger 261-acre parcel across road in part because property was physically remote); *Coeur D'Alene* v. *Simpson,* 142 Idaho 839, 849 (2006) (severing two parcels separated by road and separately owned).

Courts have considered a wide array of other factors beyond contiguous commonly-owned parcels, including: whether the property is divided by a road, see *Palm Beach Isles Assocs.* v. *United States, supra* at 1381 (describing property on either side of road as physically remote); *Coeur D'Alene* v. *Simpson, supra* at 852 (finding presence of road not determinative, but "one factor to consider"); whether property was acquired at the same time, see *FIC Homes of Blackstone, Inc.* v. *Conservation Comm'n of Blackstone*, 41 Mass. App. Ct. 681, 689 (1996) (treating as one unit all lots purchased within same subdivision on same date); *Ciampitti* v. *United States, supra* at 318-319 (finding noncontiguous property acquired on same date to be one parcel); whether the purchase and financing of parcels were linked, see *Forest Props., Inc.* v. *United States, supra* at 1365 (treating two parcels as one unit in part because option to purchase lake-bottom land could be exercised only by owner of adjacent uplands); *Ciampitti* v. *United States, supra* at 319, 320 (treating two noncontiguous parcels as one in part because "inextricably linked in terms of purchase and financing"); the timing of development, see *Palm Beach Isles Assocs.* v. *United States, supra* at 1381 (severing contiguous property where development was temporally remote from larger parcel); *Loveladies Harbor, Inc.* v. *United States*, 28 F.3d 1171, 1181 (Fed. Cir. 1994) (excluding contiguous land developed and sold before enactment of regulation); whether the land is put to the same use or different uses, see *id.* at 1181-1182 (severing conservation land from land intended for residential development); whether the owner intended to or actually did use the property as one economic unit, see *Norman* v. *United States*, 429 F.3d 1081, 1091 (Fed. Cir. 2005) (including property because "appellants themselves regarded the 2,280-acre parcel as a single economic unit"); *Appolo Fuels, Inc.* v. *United States*, 381 F.3d 1338, 1346 (Fed. Cir. 2004), cert. denied, 543 U.S. 1188 (2005) (combining contiguous leases even though purchased at different times when part of "one unified mining plan"); *Forest Props., Inc.* v. *United States, supra* at 1365 (considering two parcels as one unit when treated as "single integrated project . . . comprising the two tracts"); *K & K Constr., Inc.* v. *Department of Natural Resources*, 456 Mich. 570, 582, cert. denied,

525 U.S. 819 (1998) (combining parcels in part because owners "forged a connection between parcels . . . through the proposed development scheme and permit applications"); and the treatment of the property under State law, see *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1016 n.7 (1992) (proposing solution to denominator problem according to "whether and to what degree the State's law has accorded legal recognition and protection to the particular interest in land"); *Coeur D'Alene* v. *Simpson, supra* at 852 (considering separated or unified tax treatment by town when severing).

We conclude that the extent of contiguous commonly-owned property gives rise to a rebuttable presumption defining the relevant parcel. Common sense suggests that a person owns neighboring parcels of land in order to treat them as one unit of property. In addition to identifying the unit of property "as realistically and fairly as possible," *Ciampitti* v. *United States,* 22 Cl. Ct. 310, 319 (1991), contiguity is also the most easily measured of the many factors courts have used for this inquiry.

Even so, definition of the relevant parcel is a fact sensitive inquiry, and we do not propose a bright-line rule here. This presumption in favor of contiguity may be overcome to either increase or decrease the size of the parcel by the application of additional factors, including those described above. For example, a relevant parcel might be increased to include noncontiguous land used for a single unified economic purpose, as in the case of one business that uses several noncontiguous buildings scattered throughout a city block. See *Gove* v. *Zoning Bd. of Appeals of Chatham*, 444 Mass. 754, 762-763 & n.15 (2005) (suggesting inclusion in relevant parcel of all property previously owned by one family and used as seaside resort). Similarly, a parcel might be severed from contiguous land where an owner proposes truly different uses for separate portions, or shows that the property is treated as separate, distinct economic units. See *Loveladies Harbor, Inc.* v. *United States, supra* at 1181 (severing land intended for residential development from conservation land promised to State).

An owner's treatment of property as a distinct economic unit is the most significant factor to consider in overcoming the presumption in favor of contiguous property. Occasionally,

evidence of use as an economic unit involves ongoing established uses. More often, though, courts are presented with an owner's assertion that the intended use was to divide property into separate economic units. Concern that the introduction of such subjective factors would "increase the difficulty of an already complex inquiry" has led at least one jurisdiction to reject the use of any factor that relies on the owner's intended use rather than the owner's actual use. See *Zealy* v. *Waukesha*, 201 Wis. 2d 365, 377-378 (1995). Nevertheless, we consider an owner's intended use to be an important factor when deciding whether property should be protected as a distinct unit under the takings clause. See Michelman, Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law, 80 Harv. L. Rev. 1165, 1232 (1967) (proposing denominator defined by property "identified by the owner" as unit).

Treatment of the property under State or local law is a relevant factor, but one with limited weight. Our reliance on contiguous property minimizes the significance of lot lines in defining the boundaries of the denominator. Separate addresses or tax treatment as separate lots similarly carries little weight. Treatment under State law may play a larger role in cases of "conceptual severance," where individual uses of land are identified and protected under State law, and an owner attempts to recover compensation for the loss of the use based on that protection.[4] See *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1029 (1992) (noting that background principles of State nuisance law permit States to proscribe particular uses without compensation); *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 414 (1922) (severing interest in coal in part because recognized as separate estate under State law). But see *Keystone Bituminous Coal Ass'n* v. *DeBenedictis*, 480 U.S. 470, 500 (1987) (declining to sever interest in coal based merely on

---

[4]To allow separate regulatory treatment under State law to sever contiguous property would isolate only the regulated property in nearly all instances, thus practically ensuring compensation for every regulatory imposition. The United States Supreme Court has rejected that approach, noting that "defining the property interest taken in terms of the very regulation being challenged is circular." *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, 535 U.S. 302, 331 (2002).

"legalistic distinction[]" of State recognition of "support estate"); *Seiber* v. *United States*, 364 F.3d 1356, 1369 (Fed. Cir), cert. denied, 543 U.S. 873 (2004) (declining to use State law to define relevant parcel of timberland when owners argued State law protects property interest in individual trees). We are not here faced with such an argument, so we do not consider the treatment of Giovanella's property under State law to be of particular significance.

While few courts explicitly employ this presumption in favor of contiguous commonly-owned property, we believe that the analysis used by many courts follows this pattern. Instead of a continued attempt at balancing undifferentiated factors, or a bright-line rule, we consider it a fair and practical approach to emphasize the importance of contiguous commonly-owned property.

5. *Giovanella's claim.* (a) *The denominator.* A judge in the Superior Court denied Giovanella's motion for summary judgment and concluded that the commission's denial was not a taking. Summary judgment was later granted in favor of the commission based on the earlier decision denying Giovanella's motion. In that opinion, the judge used a relevant parcel that included both lot 1 and lot 2, and considered Giovanella's claims under both the multifactor *Penn Central* analysis, see *Penn Cent. Transp. Co.* v. *City of N.Y.*, 438 U.S. 104, 123-124 (1978), and the *Lucas* categorical rule, see *Lucas* v. *South Carolina Coastal Council, supra* at 1017. With respect to the *Lucas* categorical rule, the judge concluded that Giovanella had not lost all economically beneficial use of his land because he had sold lot 2 for a profit. Under the *Penn Central* analysis, the judge concluded that any adverse economic impact on lot 1 was in part the result of Giovanella's poor business decision to sell lots 1 and 2 separately.

When reviewing the grant of summary judgment to the commission we ask whether, when viewed in the light most favorable to Giovanella, the evidence presented would permit a finding that a taking has occurred. If not, the commission is entitled to a judgment as a matter of law. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

We begin our denominator inquiry with the presumption that Giovanella's two contiguous lots are one unit of property for purposes of the takings analysis. We next look to additional factors to determine whether there is sufficient evidence to overcome this presumption. These factors are designed to identify the property on which the impact of the regulation is to be measured. Giovanella does not make a facial challenge to the bylaw, but he challenges it as it was applied to his land. These factors should therefore be examined with respect to the time of the bylaw's impact, when the commission rejected his request for an order of conditions.

Giovanella argues that we should sever lot 1 from lot 2 because lot 1 has economically viable uses, and because he had no common development scheme connecting the two. The economic viability of land does not define its boundaries for purposes of the takings clause. Neither are two contiguous units of property severed merely because of the absence of a common development scheme. In order to overcome the presumption that lots 1 and 2 should be treated together as one unit, Giovanella must present some affirmative evidence of his separate treatment of the two lots.

In considering each of the factors in turn, we conclude that Giovanella has presented insufficient evidence to sever the two parcels. They were purchased at the same time, for a lump sum, as part of one transaction. There is no evidence that they were separately financed. The separate addresses, tax treatment, and lot lines are of minimal significance, and by themselves do not provide enough evidence of his separate treatment of the contiguous lots. They are not separated by a road. Both lots are intended for single family residential use. Finally, and most importantly, he has not shown that he planned to or actually did treat them as separate economic units. Property intended for residential development by a single owner has been considered as one economic unit, and we see no reason to depart from that treatment here. See *Zanghi* v. *Board of Appeals of Bedford*, 61 Mass. App. Ct. 82, 85-86 (2004); *FIC Homes of Blackstone, Inc.* v. *Conservation Comm'n of Blackstone*, 41 Mass. App. Ct. 681, 689 (1996).

There may be circumstances in which neighboring lots should

be considered separately under the takings clause, as when an owner can show separate business plans or financing for the two lots, or when they are developed for substantially different uses. In this case, Giovanella has provided no evidence showing that he treated his lots as two distinct economic units. He has only pointed to the absence of evidence showing that he treated them as one unit. It is not the commission's burden to show that the lots were treated as one unit under a "common development scheme." Rather, it is Giovanella's burden to show that he intended to, or actually did, treat them separately. Because he failed to produce evidence sufficient to show that they should be severed, we treat the two lots as one.

(b) *Multifactor* Penn Central *analysis.* It is clear, and Giovanella does not contest, that considering lots 1 and 2 together forecloses any compensation under *Lucas* v. *South Carolina Coastal Council,* 505 U.S. 1003, 1017 (1992). He was able to sell lot 2 for $319,900, an amount which is clearly more than a "token interest." See *Palazzolo* v. *Rhode Island,* 533 U.S. 606, 631 (2001). Because the land was not rendered economically valueless, there can be no categorical taking. We proceed to his second argument that, even if the relevant parcel includes lots 1 and 2, the judge erred in the application of the *Penn Central* factors. We consider each of the three factors in turn.

The judge concluded that the bylaw did not interfere with Giovanella's reasonable investment-backed expectations because he could have had no expectation of building on an undersized lot. This was error. The town's zoning laws did limit new home construction to 30,000 square foot lots, but Giovanella's neighborhood was made up primarily of lots no bigger than lot 1 (17,490 square feet). A person in Giovanella's situation may well have relied on his ability to build on lot 1 based on its similarity to the surrounding lots on which homes had already been built, or based on the availability of special permits for preexisting nonconforming lots.

Nevertheless, the wetlands protection bylaw did not impermissibly interfere with Giovanella's reasonable investment-backed expectations. The only financial investment he made in the property was the $130,000 he paid for both lots. This amount was more than recovered when he sold lot 2, after the order of

conditions was denied, for $319,900. Although the judge erred in holding that Giovanella *could not* have relied on his ability to build on an undersized lot, it appears that he *did not* rely on his ability to build on lot 1 because he did not invest any money that relied on the separate development of lot 1. A takings claim is not defeated "simply on account of [an owner's] lack of a personal financial investment." *Gove* v. *Zoning Bd. of Appeals of Chatham,* 444 Mass. 754, 766 (2005) (finding no interference with reasonable investment-backed expectations where owner's lack of investment in inherited property implied no reasonable expectation of ability to develop). But Giovanella's failure to show any substantial personal financial investment in the development of lot 1 "emphasizes [his] inability to demonstrate that [he] ever had any *reasonable* expectation" of building a house on that lot (emphasis in original). See *Gove* v. *Zoning Bd. of Appeals of Chatham, supra.*

When lots 1 and 2 are treated as one parcel, it becomes clear that the economic impact of the wetlands protection bylaw did not rise to the level of a taking. To evaluate the economic impact of the bylaw, we compare the value of Giovanella's land before and after the application for an order of conditions was denied. Before the denial, the town assessed lot 1 as a developable lot worth $132,800. Giovanella has presented no evidence of the separate value of lot 2 before the denial. However, even assuming that the sale of lot 2 in 2002 for $319,900 accurately reflects the value of that lot in 1999, and the combined predenial value of the lots was $452,700, the action of the commission did not constitute a taking. With the value of lot 1 reduced to zero after the denial, the value of the entire property was reduced to $319,900. The economic impact of the action of the commission resulted in a decrease in the value of Giovanella's property from $452,700 to $319,900, a decrease of twenty-nine per cent. This decrease is not significant enough to rise to the level of a taking. See *Appolo Fuels, Inc.* v. *United States,* 381 F.3d 1338, 1348 (Fed. Cir. 2004), cert. denied, 543 U.S. 1188 (2005) (finding no taking after decreases in value of seventy-eight per cent and ninety-two per cent on two combined lots); *Loveladies Harbor, Inc.* v. *United States,* 28 F.3d 1171, 1178 (Fed. Cir. 1994) (finding categorical taking after ninety-nine per cent

diminution in value, from $2,658,000 to $12,500); *Ciampitti* v. *United States*, 22 Cl. Ct. 310, 320 & n.5 (1991) (finding no taking after decrease in value of twenty-six per cent, from $19 million to $14 million).

Finally, the character of the government action does not support the conclusion that application of the bylaw was a taking. The most straightforward analysis, and the one the judge applied, is whether the character of the government action is like a physical invasion. See *Leonard* v. *Brimfield*, 423 Mass. 152, 156, cert. denied, 519 U.S. 1028 (1996); *Zanghi* v. *Board of Appeals of Bedford*, 61 Mass. App. Ct. 82, 90 (2004); *FIC Homes of Blackstone, Inc.* v. *Conservation Comm'n of Blackstone*, 41 Mass. App. Ct. 681, 695 (1996). The Supreme Court also has considered whether a regulation unfairly singles out the owner. See *Eastern Enters.* v. *Apfel*, 524 U.S. 498, 537 (1998). Other courts have looked at whether the government regulation is limited to mitigating harms or nuisances. Such regulations typically do not require compensation. *Gove* v. *Zoning Bd. of Appeals of Chatham*, *supra* at 767 (noting that regulations that mitigate harm do not typically require compensation); *Appolo Fuels, Inc.* v. *United States*, *supra* at 1351 (finding no taking where government action was "designed to protect health and safety"). Of course, many government actions that do extend beyond nuisance or harm prevention do not result in a taking. The character of government action is less likely to result in a taking when it is limited to nuisance prevention, but this factor provides no guidance for analyzing regulations that extend beyond nuisance prevention. See *Forest Props., Inc.* v. *United States*, 177 F.3d 1360, 1366 (Fed. Cir.), cert. denied, 528 U.S. 951 (1999) (finding character of government action had no impact where action was not limited to preventing nuisance).

No matter how the character of the commission's action is analyzed, application of the bylaw to Giovanella's land was not a taking. The limitations imposed by the town's wetlands protection bylaw are not like a physical invasion, nor does the bylaw unfairly single out Giovanella. Even if the bylaw extends beyond preventing harms or nuisance, the character of the commission's denial would have no impact on the case. Giovanella has failed to demonstrate any reasonable reliance on his ability

to build a home on lot 1, or to show sufficient economic losses resulting from the denial of his application. As a result, neither justice nor fairness entitle him to compensation for the impositions of the bylaw.

*Judgment affirmed.*