NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1189                                        Appeals Court

JANICE SMYTH  vs.  CONSERVATION COMMISSION OF FALMOUTH &
another.[1]


No. 17-P-1189.

Barnstable.      September 7, 2018. - February 19, 2019.

Present:  Green, C.J., Milkey, & Singh, JJ.


Eminent Domain, Jury trial, What constitutes taking.
     Constitutional Law, Eminent domain, Taking of property,
     Trial by jury.  Practice, Civil, Eminent domain proceeding,
     Jury trial, Judgment notwithstanding verdict.




     Civil action commenced in the Superior Court Department on
November 27, 2012.

     A motion to bifurcate the trial was considered by Cornelius
J. Moriarty, II, J.; the case was tried before him; and a motion
for judgment notwithstanding the verdict was considered by him.


     Michelle N. O'Brien (Nicholas P. Brown also present) for
the defendants.
     Brian J. Wall for the plaintiff.
     Edward J. DeWitt, for Association to Preserve Cape Cod,
Inc., amicus curiae, submitted a brief.
     Rebekah Lacey, for Massachusetts Association of
Conservation Commissions, amicus curiae, submitted a brief.


_____

     [1] Town of Falmouth.

GREEN, C.J. A land owner brought this action in the Superior Court, claiming that local land use regulation effected a taking of her property, requiring just compensation under the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights. This appeal presents a question of first impression in Massachusetts: whether the land owner is entitled to have her regulatory taking claim decided by a jury. We conclude that the jury right does not attach to such a claim, and that the judge erred in denying the defendants' motion to submit only the question of damages to a jury. We further conclude that the evidence presented at the trial did not, as matter of law, support a claim of regulatory taking. We accordingly reverse the judgment in the plaintiff's favor and direct that judgment enter for the defendants.[2]

Background. We summarize the facts appearing in the record, which are for the most part undisputed.[3] The plaintiff owns an unimproved lot of land at 250 Alder Lane (property) in Falmouth (town). She inherited the property from her parents,

---

[2] We acknowledge the amicus briefs submitted by the Association to Preserve Cape Cod, Inc. and the Massachusetts Association of Conservation Commissions.

[3] Though the evidence presented by the parties conflicts in certain respects, the divergence is not material to the issues we address below and does not affect the accuracy of the summary that follows.

who purchased it for $49,000 in 1975.[4]  The property is located within a residential subdivision known as "Wild Harbour Estates," which contains approximately 174 lots.[5]  Though the plaintiff's parents purchased the property with the intention of someday building a residence to occupy in retirement, they took no steps toward planning or building a home on it.  From 1975 through the end of 2005, the plaintiff's parents (and later the plaintiff) paid property taxes and homeowners' association dues on the property, and certain legal fees incident to transferring title to the plaintiff, but otherwise incurred no development or other costs or expenses associated with their ownership.

In June, 2006, the plaintiff retained a consultant to perform a soil evaluation test for a proposed septic system on the property, and her husband (an architect) prepared two

---

[4] The plaintiff's parents also purchased, and the plaintiff inherited, another nearby (but not contiguous) lot at 269 Alder Lane in 1972.  The record does not disclose the original purchase price for 269 Alder Lane.  The plaintiff sold that unimproved lot in August, 2006, for $300,000.  The defendants press no contention that the two noncontiguous lots, purchased at different times, should be considered a single economic unit comprising the "denominator" for assessing the impact of the regulations on the plaintiff's investment-backed expectations. See Giovanella v. Conservation Comm'n of Ashland, 447 Mass. 720, 726-731 (2006).

[5] Under the town zoning bylaw, permitted uses in the zoning district in which the property is located include, among other things, one-family detached houses; parks; playgrounds; beaches; watershed; agriculture and floriculture; and common piers, floats, and docks.

sketches for a potential house on the property.  In late 2007 and early 2008, the plaintiff engaged various professionals to prepare formal plans for a house on the property, and to assist in the preparation of applications for the required approvals.  In 2012, the plaintiff filed a notice of intent with the defendant town conservation commission (commission), seeking approval, under both the Wetlands Protection Act, G. L. c. 131, § 40, and the town wetlands protection bylaw (and related regulations), of her plans to construct a residence on the property.  As submitted, the plaintiff's plans required several variances from the wetlands protection bylaw, as they did not comply with its requirements covering coastal banks, salt marshes, or land subject to coastal storm flowage.  The commission denied the plaintiff's variance requests, and the plaintiff filed the present action.  In her amended complaint, the plaintiff sought relief in the nature of certiorari, under G. L. c. 249, § 4, and declaratory relief, in both instances directed to the denial of her variance requests.  Count III of the amended complaint asserted that the application of the town's wetlands protection bylaw to the property effected a regulatory taking, for which she was entitled to compensation under the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights.

A judge of the Superior Court denied the plaintiff's motion for judgment on the pleadings, thereby upholding the commission's decision and disposing of counts I and II of the complaint; thereafter, a different judge denied the defendants' motion for summary judgment on the plaintiff's regulatory taking claim. The defendants then moved to bifurcate the trial, so that the question whether a regulatory taking had occurred would be tried without a jury and only the question of damages (if a taking had occurred) would be tried before a jury. The judge denied the defendants' motion, submitting both the question of liability and of damages to the jury. At trial, among other evidence, the plaintiff presented the testimony of an appraiser who determined that the property in 2014 had a value, if buildable, of $700,000 and, if unbuildable, of $60,000.[6] After trial, a jury found that the wetlands protection bylaw effected a regulatory taking of the plaintiff's property, and awarded damages in the amount of $640,000. The plaintiff filed a motion for costs and for interest on the damages award pursuant to G. L. c. 79, § 37 (governing eminent domain), or alternatively, pursuant to G. L. c. 231, § 6H (governing damages generally). In her subsequent reply to the defendant's response to her

---

[6] The appraiser also testified that the values of the property in 2012, when the commission denied the plaintiff's application, would be "very similar" to those determined in his 2014 appraisal.

motion, the plaintiff argued that the interest should be calculated pursuant to G. L. c. 231, § 6H, and not G. L. c. 79, G. L. c. 37.  The trial judge awarded costs and directed that interest be calculated pursuant to G. L. c. 79, § 37, citing Lopes v. Peabody, 430 Mass. 305, 314 (314) (1999).  After judgment entered, the defendants moved unsuccessfully for judgment notwithstanding the verdict.  Both parties appealed.

Discussion.  1.  Jury right.  Under Mass. R. Civ. P. 39 (a), as amended, 450 Mass. 1403 (2008), it is error to submit an issue to a jury over objection, unless the party seeking the jury determination has a right to a jury trial on the issue.[7] The right to a jury trial is established by art. 15 of the Massachusetts Declaration of Rights, which "has been construed as preserving the right to trial by jury in actions for which a right to trial by jury was recognized at the time the Constitution of the Commonwealth was adopted in 1780."  New Bedford Hous. Auth. v. Olan, 435 Mass. 364, 370 (2001).[8]  "If a wholly new cause of action is created, a jury trial right does not attach to that claim."  Department of Revenue v. Jarvenpaa,

---

[7] The rule is the same in the Federal courts.  See Fed. R. Civ. P. 39(a).

[8] Essentially the same analysis is used to determine whether the jury right attaches under the Seventh Amendment to the United States Constitution.  See Dalis v. Buyer Advertising, Inc., 418 Mass. 220, 224 n.5 (1994).

404 Mass. 177, 188 (1989). A new cause of action nonetheless may fall within the jury trial right if it is analogous to a common-law claim entitled to trial by jury in 1780. See Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 561 n.16 (2004).

The parties in the present case agree that a claim based on an alleged regulatory taking or, as such a claim is sometimes described, inverse condemnation, did not exist when the Massachusetts Constitution was adopted, or for a considerable time thereafter; it came into existence only when the Supreme Court of the United States issued its decision in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415-416 (1922). The question whether the plaintiff is entitled to a jury trial on her claim of regulatory taking accordingly depends on whether it is analogous to a common-law claim entitled to trial by jury in 1780, or whether it is a wholly new cause of action.

We are not persuaded that an ordinary claim of a regulatory taking sufficiently resembles an action in tort to warrant a conclusion that the claim is analogous to such a claim for purposes of recognizing the right to a jury trial. Among other differences, a claim of regulatory taking -- at least of the type framed by the plaintiff's amended complaint -- is markedly different from an action for trespass, in that the plaintiff raises no claim of physical invasion of her property. Compare,

e.g., Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987), in which a requirement that the property owners maintain a pathway for public access on their property effected a regulatory taking requiring just compensation; Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 426 (1982), in which a physical invasion of private property authorized by the government for installation of cable lines and related equipment constituted a compensable taking, without regard to the public purposes it may serve.

The comparison of a claim of regulatory taking to common law tort fails from another perspective. As Justice Souter observed in his dissenting opinion in Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 747 (1999) (Del Monte Dunes), unlike the question of liability in a common law tort claim, the question of liability in a claim of regulatory taking does not concern whether a wrongful act occurred; indeed, the "very assumption that liability flows from wrongful or unauthorized conduct is at odds with the modern view of acts effecting inverse condemnation as being entirely lawful. . . . Unlike damages to redress a wrong as understood in Gardner [v. Newburgh, 2 Johns. Ch. 162 (N.Y. 1816) (Kent, Ch.)] or Bradshaw [v. Rodgers, 20 Johns. 103 (N.Y. 1822)] (or even in a modern tort action), a damages award in an inverse condemnation action

orders payment of the 'just compensation' required by the Constitution for payment of an obligation lawfully incurred."

The essence of the plaintiff's claim of regulatory taking is that enforcement of the regulatory scheme has unfairly burdened her ability to use the property, in comparison to her distinct investment-backed expectations. Claims of regulatory taking in circumstances such as those of the present case, where the regulation at issue effects neither a permanent physical invasion of property nor a complete deprivation of all economically beneficial use, require a highly nuanced balancing of multiple factors. Under Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978) (Penn Central), the factors that have "particular significance" include "[t]he economic impact of the regulation" on the plaintiff; "the extent to which the regulation has interfered with [the property owner's] distinct investment-backed expectations"; and "the character of the governmental action." See Gove v. Zoning Bd. of Appeals of Chatham, 444 Mass. 754, 764 (2005). The claim itself, and the balancing test employed to evaluate it, find no apt comparison in actions recognized at common law in 1780; it is instead a "wholly new" cause of action.[9]

---

[9] In our view, the application of the multifactored Penn Central test to the effect of a particular regulatory scheme on a particular parcel of land is perhaps most similar to the question whether acts are "unfair or deceptive" within the

For their part, the defendants suggest that a claim of regulatory taking most closely resembles a direct eminent domain proceeding.  We disagree.  While both claims rest on the same constitutional guarantee against governmental taking of property without just compensation, and both ultimately result in the same remedy -- just compensation -- a claim of regulatory taking involves a preliminary (albeit significant and complex) question whether a taking has occurred at all.  It is that determination of liability, based on the multifactored Penn Central test we have discussed, that is entirely different in kind from any question undertaken in a traditional direct condemnation action.  See, e.g., Del Monte Dunes, 526 U.S. at 712-713.[10]

---

meaning of G. L. c. 93A.  In that context, the Supreme Judicial Court noted that a "flexible set of guidelines" is used to determine what is lawful or unlawful, and that, though "certain consumer violations are perhaps rooted in common law claims," the terms "unfair and deceptive" are "sufficiently open-ended to embrace causes of action for which there are no common law analogues."  Nei v. Burley, 388 Mass. 307, 313 (1983).  Though the ultimate remedy -- just compensation in the form of money damages -- is legal rather than equitable in nature, "[a]n award of monetary relief does not always implicate, a fortiori, an art. 15 right to a jury trial."  Stonehill College, 441 Mass. at 568.

[10] Though both parties appear to assume in their respective arguments that treating a claim of regulatory taking as analogous to a direct condemnation action would result in a conclusion that no jury right attaches, that conclusion is not at all clear.  Province Law 1756-1757, c. 18, enacted in 1756 and still in effect when the Massachusetts Constitution was adopted in 1780, provided for the layout of highways and the assessment of related damages and that landowners could appeal to a jury "if the person complaining desires the same.

Finally, we reject the plaintiff's contention that Del Monte Dunes itself established a right to a jury trial for a claim of regulatory taking.  Del Monte Dunes was brought under 42 U.S.C. § 1983, because "the State of California did not provide a compensatory remedy for temporary regulatory takings." 526 U.S. at 710.  Though the Court found a jury right for the property owner in that case, it expressly observed that its decision did "not address the jury's role in an ordinary inverse condemnation suit."  Id. at 721.[11]

We conclude that the question whether a particular regulatory scheme has effected a regulatory taking, as distinct from the question of what constitutes just compensation for the taking -- or, in other words, the question of liability in a

---

[11] Pluralities in Del Monte Dunes adopted contrasting views of the nature of an inverse condemnation claim and the extent to which it might be analogized to a claim in tort or a direct condemnation claim.  Justice Kennedy, writing for himself, Chief Justice Rehnquist, and Justices Stevens and Thomas, concluded that the claim is sufficiently analogous to a common law tort claim to warrant submission of the question of liability to a jury, see 526 U.S. at 715, while Justice Souter, writing in dissent for himself and Justices O'Connor, Ginsburg, and Breyer, concluded that the claim is not analogous to a claim in tort but instead is more appropriately analogized to a classic eminent domain action, to which no jury right applies.  See supra at 536-537 (Souter, J., dissenting).  There is no majority holding in Del Monte Dunes for the proposition that an ordinary regulatory taking claim, outside the context of a claim under 42 U.S.C. § 1983 occasioned by the absence under the relevant State law of a postdeprivation remedy, is analogous to a common law tort claim.

regulatory taking claim -- is a "wholly new" cause of action, to which the right to a jury trial does not attach. See Jarvenpaa, 401 Mass. at 188.[12]

2. _Regulatory taking_. Our analysis does not end with our conclusion that it was error to submit the question of liability to the jury over the defendants' objection. The question remains whether to remand the case for a new trial without a jury or whether, as the defendants contended in their motion for judgment notwithstanding the verdict, the question of liability can be determined as matter of law on the basis of the trial record. To that end, we consider whether the evidence at trial,

---

[12] Our conclusion that no jury trial right attaches to the question of liability in a regulatory taking claim is in accord with the vast majority of other States that have considered the question. See, e.g., Marshall v. Department of Water & Power, 219 Cal. App. 3d 1124, 1141 (1990); Scott v. County of Custer, 178 P.3d 1240, 1243 (Colo. App. 2007); Cumberland Farms, Inc. v. Groton, 262 Conn. 45, 70 (2002); Department of Agric. & Consumer Servs. v. Bonanno, 568 So. 2d 24, 28 (Fla. 1990); Covington v. Jefferson County, 137 Idaho 777, 780 (2002); Hampton v. Metropolitan Water Reclamation Dist., 2016 IL 119861, ¶ 23; Zimmerman v. County Comm'rs of Wabaunsee County, 293 Kan. 332, 344 (2011); Alevizos v. Metropolitan Airports Comm'n of Minneapolis & St. Paul, 298 Minn. 471, 484 (1974); 6224 Fontenelle Blvd., L.L.C. v. Metropolitan Utils. Dist., 22 Neb. App. 872, 879 (2015); McCarran Int'l Airport v. Sisolak, 122 Nev. 645, 661 (2006); Wilkinson v. Board of Univ. & Sch. Lands, 2017 N.D. 231, ¶ 22; Harris v. Lincoln, 668 A.2d 321, 327 (R.I. 1995); WRB Ltd. Partnership v. County of Lexington, 369 S.C. 30, 32 (2006); Hallco Tex., Inc. v. McMullen County, 221 S.W.3d 50, 56 (Tex. 2006); E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist., 2010 WI 58, ¶ 29 n.20. Contrast Leone v. County of Maui, 141 Haw. 68, 85 (2017); Iowa Dev. Co. v. Iowa State Highway Comm'n, 255 Iowa 292, 297 (1963); Carter v. Oklahoma City, 862 P.2d 77, 81 (Okla. 1993).

viewed in the light most favorable to the plaintiff, supports a claim of regulatory taking.  See Boothby v. Texon, Inc., 414 Mass. 469, 470 (1993).[13]

As we have discussed above, the question whether a regulatory scheme effects a taking calls for application of a balancing test, in which the "relevant 'guideposts' include: the actual 'economic impact of the regulation' on the plaintiff; the extent to which the regulation 'has interfered with' a landowner's 'distinct investment-backed expectations'; and the 'character of the governmental action'" (citation omitted). Gove, 444 Mass. at 764.  Against that background, we consider the evidence elicited at trial.[14]

a.  Economic impact.  Evaluation of the economic impact of a regulation on the plaintiff begins with a comparison of the value of the property with and without the regulation.  See Giovanella v. Conservation Comm'n of Ashland, 447 Mass. 720, 734 (2006).  However, even quite significant reductions in value do

_____

[13] The defendants first raise their contention that no regulatory taking occurred by claiming error in the denial of their motion for summary judgment.  However, the denial of a motion for summary judgment is not reviewable on appeal after a trial on the merits.  Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 126 (1986).  We instead consider the question through the lens of the defendants' posttrial motion for judgment notwithstanding the verdict.

[14] Though the parties sharply dispute whether a regulatory taking occurred, our review of the record reveals that the facts bearing on that question are largely not in dispute.

not necessarily constitute a regulatory taking.  See, e.g.,

Appolo Fuels, Inc. v. United States, 381 F.3d 1338, 1348 (Fed.

Cir. 2004), cert. denied, 543 U.S. 1188 (2005) (finding no

taking after decreases in value of seventy-eight per cent and

ninety-two per cent on two combined lots).  Based on the

valuation determined by the plaintiff's appraiser, the

regulation reduced the value of the property from $700,000 (if

buildable) to $60,000 (if unbuildable).  While significant, we

observe that even as unbuildable the property's value is still

greater than the amount ($49,000) the plaintiff's parents paid

for the property when they purchased it.[15]

As for other uses to which the property might be put, the

zoning bylaw allows it to be used, among other things, as a park

or a playground, and the plaintiff's appraiser testified at

trial that it would be attractive to abutting owners on either

side either for privacy or for expansion of their respective

properties.  See FIC Homes of Blackstone v. Conservation Comm'n

of Blackstone, 41 Mass. App. Ct. 681, 694 (1996).

---

[15] The plaintiff presented no evidence at trial of the
present value of the price her parents paid for the property in
1975.  While we recognize the likelihood that the present value
of the original purchase price may exceed the current value of
the lot in its unbuildable condition, as we have observed, even
a substantial reduction of the value of property can occur
without effecting a regulatory taking.  See Giovanella, 447
Mass. at 734-735, and cases cited.

b.  <u>Investment-backed expectations</u>.  The fact that a property owner acquired property by means of inheritance rather than purchase does not by itself defeat a claim of interference with investment-backed expectations.  See <u>Gove</u>, 444 Mass. at 766.  However, the record shows a distinct lack of any financial investment toward development of the property, whether by the plaintiff or her parents, at any time over more than thirty years, including a substantial period within which it could have been built upon.  The plaintiff (and her parents before her) paid property taxes on the property, assessed in its undeveloped state, and the plaintiff spent $600 on a percolation test in 2006 as she began to explore development possibilities.[16]  In such circumstances, and considering that (as we have observed) the property even as unbuildable is worth more now than its purchase price, "it seems clear that any compensation would constitute a 'windfall' for [the plaintiff]."  <u>Gove</u>, <u>supra</u>.

c.  <u>Character of the governmental action</u>.  In evaluating the character of the governmental action, "[t]he most straightforward analysis . . . is whether the character of the

_____

[16] As the plaintiff developed and prosecuted her variance applications in the proceedings that led to the present action, she spent approximately $70,000 for professional services.  We note, however, that by definition those fees were spent at a time when she knew her property could not be developed under applicable regulations, but only with the relief of several variances.

governmental action is like a physical invasion." <u>Giovanella</u>,
447 Mass. at 735. "The Supreme Court also has considered
whether a regulation unfairly singles out the owner. Other
courts have looked at whether the government regulation is
limited to mitigating harms or nuisances. Such regulations
typically do not require compensation" (citation omitted). <u>Id</u>.

Here, the government's action was clearly not like a
physical invasion, and the plaintiff admits as much. The
regulations at issue are of general applicability to all
property in the town that has wetland resources and, by their
terms, are designed to protect coastal and wetland resources
generally. "Reasonable government action mitigating such harm,
at the very least when it does not involve a 'total' regulatory
taking or a physical invasion, typically does not require
compensation." <u>Gove</u>, 444 Mass. at 767.

<u>Conclusion</u>. In sum, based on the undisputed facts in the
record, viewed in the light most favorable to the plaintiff, we
conclude that the regulations at issue in the present case did
not effect a regulatory taking of the property.[17] The order

---

[17] Our conclusion renders moot the plaintiff's cross appeal,
challenging the trial judge's conclusion that interest on the
damage award should accrue at the statutory rate applicable to
eminent domain awards, under G. L. c. 79, § 37, rather than to
damage awards more generally, under G. L. c. 231, § 6H. We note
that, though the plaintiff dismisses the discussion of the topic
in <u>Lopes</u>, 430 Mass. at 314, as dictum, it is clear from its

denying the defendants' motion for judgment notwithstanding the verdict is reversed.  The judgment is reversed, and a new judgment shall enter for the defendants.

<u>So ordered</u>.

---

opinion that the court intended to provide conclusive guidance on the subject for application to future cases.