ABRAHAM MOSKOW vs. COMMISSIONER OF ENVIRONMENTAL
MANAGEMENT & others.

Suffolk.   September 18, 1981. — November 4, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Eminent Domain*, What constitutes taking.  *Inland Wetlands Act.*

A  restrictive  order  of  the  Commissioner  of  Environmental  Man-
agement under the Inland Wetlands Act, forbidding the dredging, fill-
ing, or other alteration of an area of wetland comprising approximate-
ly 55% of a parcel of undeveloped land, was not such an extensive in-
terference with the use of the parcel as a whole that it constituted a
taking.  [531-535]

CIVIL ACTION commenced in the Superior Court on June 16,
1977.

The case was heard by *Ronan, J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*Francis S. Wright,* Special Assistant Attorney General,
for the defendant.

*John M. Reed* for the plaintiff.

*Gregor I. McGregor & Harlan M. Doliner* for Massachu-
setts  Association  of  Conservation  Commissions,  amicus
curiae, submitted a brief.

ABRAMS, J.  The *Commissioner* of Environmental Man-
agement (Commissioner) appeals from a judgment which
held that a restrictive order issued pursuant to G. L. c. 131,
§ 40A (Inland Wetlands Act), was the "equivalent of a tak-
ing."[1]  We  granted  the  Commissioner's  application  for
direct appellate review.  We reverse.

---

[1] The plaintiff had also claimed that the statute, G. L. c. 131, § 40A,
was so broad as to be an unconstitutional delegation of authority.  The

We summarize the judge's findings of fact. The plaintiff owns approximately 297,000 square feet of undeveloped land in Newton (parcel). The judge found that approximately 55% of the parcel (area 17) is inland wetland, because its vegetation and muck soil are typical of that found in such areas. The dominance of vegetation characteristic of wetlands "indicates that the ground water is at or near the surface of the ground during the majority of the year. The ground beneath area 17 is composed of between 3.5 and 5.5 feet of muck soil, which has a high organic content and contains silt and fine sand."

On April 7, 1977, the Commissioner placed a restrictive order on area 17.[2] Under this order, the plaintiff may not dredge, fill, or alter the wetland. The judge found that "[p]arcel 17's low, flat topography, muck soils and dense vegetation retain peak flows during periods of flooding and release this water slowly and evenly over extended periods of time. This moderates extremes in water level and velocity, and reduces flood damages in downstream areas of the Charles River Watershed. The parcel's profuse vegetation and muck soil functions as a natural filter system, removing sediments, salt, petroleum products, and other pollutants from the water. In addition, area 17 helps to maintain base flows in downstream areas during periods of low flow, thereby diluting concentration of water pollutants during these periods." The judge therefore found that area 17 plays an important role in preventing floods and reducing pollution in the Charles River Watershed.

Under the Commissioner's order, the judge found that the plaintiff could still use area 17 for certain limited purposes.

---

judge concluded that "[t]he delegation of power to the department was proper; the department hearings were not adjudicatory; the hearings were legislative in nature . . . [and that] [t]he issuance of the restriction was in accord with the provisions of c. 131, § 40A." The plaintiff has not appealed from these rulings, and thus they are not before us.

[2] The restrictions on area 17 can be modified if wetland conditions change. Under G. L. c. 59, § 11, real estate restricted under G. L. c. 131, § 40A, is assessed as a separate parcel.

These uses include: "a. The construction and maintenance of catwalks, wharves, boathouses, boat shelters, fences [,] duckblinds, wildlife management shelters, foot bridges, observation decks and shelters; b. The construction and maintenance of a roadway or driveway of minimum and practical width where reasonable alternative means of access from a public way to unrestricted land of the same owner is unavailable; c. The installation and maintenance of underground or overhead utilities; d. Commercial and non-commercial outdoor recreation activities including hiking, boating [,] trapping [,] hunting, e. Other works which are designed to enhance the appearance and attractiveness of open space of recreational areas without altering their use as such; and f. The use or improvement of land or water for agricultural purposes."

The judge correctly concluded that the Commonwealth can reasonably regulate private property in the public interest. See *Lovequist* v. *Conservation Comm'n of Dennis*, 379 Mass. 7, 19 (1979); *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 227-229 (1972), cert. denied, 409 U.S. 1108 (1973); *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 125 (1978). "Controlling and restricting the filling of wetlands is clearly within the scope of the police power of the State." *Sibson* v. *State*, 115 N.H. 124, 126 (1975). See *Commissioner of Natural Resources* v. *S. Volpe & Co.*, 349 Mass. 104, 107 (1965); *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation & Dev. Comm'n*, 11 Cal. App. 3d 557, 570-571 (1970); *Brecciaroli* v. *Commissioner of Environmental Protection*, 168 Conn. 349, 353-354 (1975); *Pope* v. *Atlanta*, 242 Ga. 331, 333-334 (1978), cert. denied, 440 U.S. 936 (1979); *Potomac Sand & Gravel Co.* v. *Governor of Md.*, 266 Md. 358, 367, cert. denied, 409 U.S. 1040 (1972). The judge also correctly concluded that the "crucial issue is whether, notwithstanding the meritorious character of the regulation, there has been such a deprivation of the practical uses of a landowner's property as to be the equivalent of a taking." *Commissioner of Natural Resources* v. *S. Volpe & Co., supra.*

The judge then determined that the order was the "equivalent of a taking" for two reasons. "First, any and all profitable use of [area] 17 has been prohibited; the ban is permanent. The owner is to be denied effectively the use of more than half of his parcel.  Second, unlike zoning and historical district types of cases, there is no reciprocity of benefit."

The findings of the judge do not support his conclusion. He found that after the restrictive order the plaintiff could build a single family residence on his land.  A single family house is a sufficient practical use to prevent the wetland restrictions from constituting a taking.  See *Lovequist* v. *Conservation Comm'n of Dennis*, 379 Mass. 7, 20 (1979). Government regulations like the wetlands restrictions at issue in this case, "may deprive an owner of a beneficial property use — even the most beneficial such use — without rendering the regulation an unconstitutional taking." *Id.* at 19.  See *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 123-128 (1978); *Goldblatt* v. *Hempstead*, 369 U.S. 590, 592 (1962); *Turnpike Realty Co.* v. *Dedham*, 362 Mass. at 234.  "'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated.  In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole . . . ." *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. at 130-131.  Since the plaintiff may still use his property for a dwelling or dwellings, there has not been such an extensive interference with the parcel as a whole that it constitutes a taking.[3]

---

[3] The construction of a single family house may not be the only practical use.  At trial, there was evidence that the plaintiff could subdivide his parcel into four lots without violating the restrictions.  In addition, there was evidence that twenty years earlier the plaintiff had planned to subdivide his parcel into eight lots.  The judge found that the plan as proposed did not comply with Newton's existing zoning ordinance.  He also found that, even without the department's restrictions, the plaintiff could

Although the judge realized that he should look at the effect of the restriction on the plaintiff's entire parcel, not just area 17, nevertheless he did not do so. Rather, the judge focused solely on area 17 and the limitations on its use. Consequently, the judge erred in concluding that the restrictive order was a taking.

The judge also determined that the restrictions were the "equivalent of a taking," because the plaintiff received "no reciprocity of benefit" from the restrictions. He found that "the area receiving the benefit is an area downstream and far removed from the locus." Since the plaintiff received no direct benefit from the restrictions, the judge determined that he was unconstitutionally deprived of his property without compensation. Even if we were to assume that the plaintiff received no benefit, however, the restrictions did not constitute a taking. The fact that the Inland Wetlands Act "has a more severe impact on some landowners than on others . . . does not mean that the law effects a 'taking.' Legislation designed to promote the general welfare commonly burdens some more than others." *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 133 (1978). See *Hadacheck* v. *Sebastian*, 239 U.S. 394 (1915). As long as "the restrictions [are] reasonably related to the implementation of a policy . . . expected to produce a widespread public benefit and applicable to all similarly situated property," they need not produce a reciprocal benefit. *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 134

---

subdivide his parcel into eight lots. We need not determine whether there is any inconsistency in these findings, for even if an eight lot subdivision were permissible in the absence of restrictions, the Commissioner's order would still not be a taking. A reduction in the number of houses that an owner may build is a diminution in value and not a taking. "There is no set formula to determine where regulation ends and taking begins. Although a comparison of values before and after is relevant . . . it is by no means conclusive . . . ." *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 236 (1972), cert. denied, 409 U.S. 1108 (1973), quoting from *Goldblatt* v. *Hempstead*, 369 U.S. 590, 594 (1962). The plaintiff offered no evidence which showed that he suffered an actual financial loss as a result of the restrictions. Thus, there is no factual support for his claim of confiscation.

n.30 (1978). Since the Inland Wetlands Act is reasonably related to the goals of flood and pollution control, its application to the plaintiff is not unconstitutional.[4]

The judgment is reversed, and the case is remanded to the Superior Court for the entry of a judgment that the Commissioner's restrictive order is not the "equivalent of a taking" and that the restrictive order for the city of Newton, as it applies to area 17, is valid and enforceable.

*So ordered.*

---

[4] The record suggests that the plaintiff may benefit from the restrictions. As a citizen, the plaintiff benefits from the Inland Wetlands Act because it helps society avoid the relief expenditures connected with flooding and pollution control. *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221, 234-235 (1972). See generally McGregor & Dawson, Wetlands and Floodplain Protection, 64 Mass. L. Rev. 73 (1979); Dawson, Protecting Massachusetts Wetlands, 12 Suffolk U.L. Rev. 755 (1978). Property with a view of the wetlands may increase in value. See *Department of Ecology* v. *Pacesetter Constr. Co.,* 89 Wash. 2d 203 (1977).