NICHOLAS FRAGOPOULOS *vs.* RENT CONTROL BOARD OF CAMBRIDGE & another.[1]

Middlesex. April 4, 1990. - August 13, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Rent Control. Municipal Corporations*, Rent control. *Constitutional Law*, Rent control. *Due Process of Law*, Substantive rights, Taking of property.

In circumstances where the findings of the Cambridge rent control board demonstrated that the board would have been within the proper exercise of its discretion under the rent control ordinance to deny the plaintiff's request for a removal permit to combine two rent-controlled apartments, the board had the authority to grant a removal permit subject to certain conditions [304-305], and no violation of the plaintiff's procedural due process rights by reason of the board's alleged lack of authority was demonstrated [305].

The Cambridge rent control board's grant of a removal permit subject to conditions did not interfere with any substantive due process rights secured to the property owner under the Fourteenth Amendment to the Constitution of the United States. [306-307]

The Cambridge rent control board's granting a request for a removal permit subject to conditions did not amount to a "taking" of the owner's property for public use without compensation in violation of the owner's rights under the Fifth and Fourteenth Amendments to the United States Constitution. [307-309]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on May 7, 1987.

The case was heard by *Lawrence F. Feloney*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Larry W. Beeferman* for the plaintiff.

*Patricia A. Cantor* for Rent Control Board of Cambridge.

---

[1]Clinton Jean, tenant of the plaintiff at the subject property.

*Susan Hegal* for Clinton Jean.

LYNCH, J. This is an appeal from a District Court judgment affirming a decision of the rent control board of the city of Cambridge (board) granting the plaintiff, Nicholas Fragopoulos, a removal permit subject to conditions. The plaintiff challenges the board's decision on both statutory and constitutional grounds, asserting first that the board is without authority to attach conditions, and that he is in fact entitled to an unconditional removal permit; and secondly, that the board's decision violated his rights under the provisions of the Fifth and Fourteenth Amendments to the United States Constitution. There was no error.

There is no dispute as to the material facts before us. In 1983, the plaintiff purchased the building at 336-338 Western Avenue in Cambridge. There are four rent-controlled units in the building. In 1986, two units were rented to low or moderate income tenants at will. The other two had been vacant at least since 1983, and are the subject of the plaintiff's removal request.

The plaintiff wished to combine the two vacant units into a single unit, where he and his family would live. Because the effect of the plaintiff's plan would be to convert a four-unit building to an owner-occupied three-unit building, thereby "removing" units from the city's stock of rent-controlled housing,[2] he was required under the rent control ordinance to obtain a removal permit before implementing this plan. Ordinance No. 966, c. 23 of the Code of the City of Cambridge. As presented to the board's hearing officer on August 17, 1986, the plaintiff's proposal called for "removal of the kitchen at 338-2 [the upstairs unit] and the removal of the bathroom at 338-1 [the ground floor unit]." The plaintiff already had renovated unit no. 338-1 and intended to renovate no. 338-2. The board voted to accept the findings and one of two alternative recommendations of the hearing officer.[3] That

---

[2]An owner-occupied three-family building is exempt from regulation under the Cambridge rent control laws. See c. 36 of the Acts of 1976.

[3]The other recommendation of the hearing officer was to deny the plaintiff a removal permit.

decision was "to grant a removal permit for the limited purpose of allowing the owner to remove the kitchen fixtures in unit 338-#2 so that he and his family might owner-occupy both units 338-1 and 338-2," but on condition that "336-338 Western Ave. will continue to be regarded as a four unit building and upon resale the owner must either restore the kitchen to normal use or obtain from the purchaser a [commitment] to use the two units in the manner of the previous owner."

1. *Board's authority under the rent control and removal ordinances.* The rent control ordinance of the city of Cambridge was enacted under the authority of c. 36 of the Acts of 1976, a special act enabling the city of Cambridge to control rents and evictions. *Flynn v. Cambridge*, 383 Mass. 152, 154-155 (1981). The validity of the removal ordinance under which the board acted in the case was upheld in *Flynn v. Cambridge, supra.* Therefore, there is little question, and the plaintiff does not contend otherwise, that the board had the authority to grant or deny the plaintiff's request for a removal permit. The plaintiff does contend, however, that the board had no authority to attach conditions to the grant of a removal permit and, having decided to grant one, could only do so outright.

It is true that neither the enabling act nor the ordinance specifically authorizes the granting of removal permits subject to conditions. However, unless the plaintiff can show that the board was required, as a matter of law, to grant him an unconditional removal permit, we need not consider his attack on the conditional permit because the board would be within the proper exercise of its discretion in denying his request. Discretion to deny completely an application includes the power to grant less than the full privilege. *Goodwin v. Department of Pub. Utils.*, 351 Mass. 25, 26 (1966).

The board affirmed the hearing examiner's finding that the granting of the removal permit would result in the removal of two rental units from the market. The ordinance provides that, in deciding whether to grant a permit, the board shall

consider, among other things, the benefits to persons sought to be protected by the act and ordinance (low or moderate income tenants); the hardship imposed on the tenants residing in the unit; and any aggravation in the shortage of rental housing which may result from the removal. Code of the City of Cambridge, Ordinance 966, § 1 (d). The findings of the board clearly demonstrate that the board would have been within the proper exercise of its discretion under the ordinance if it had denied the plaintiff's request. The plaintiff's attack on the conditional grant of the permit is therefore without merit.

2. *Constitutional claims.* The plaintiff further argues that the ordinance violates his procedural and substantive due process rights under the Fourteenth Amendment, and his right not to have his property taken for public use without just compensation under the Fifth and Fourteenth Amendments to the United States Constitution.

We note that the record fails to establish or even imply that these constitutional claims were raised below. However, despite the absence in the record of any support for the plaintiff's contention that the constitutional issues were argued in the District Court, the defendants conceded as much at oral argument. Therefore, we consider the plaintiff's constitutional claims.

The plaintiff's claim of a violation of his procedural due process rights rests primarily on the same foundation as his contention that the board overstepped its authority under the rent control and removal ordinances in granting him a permit with conditions. Since we have concluded that the board lawfully exercised its discretion under those ordinances, the plaintiff's procedural due process violation claims, too, must fail.[4]

---

[4]The only other basis argued by the plaintiff to support his assertion that the board has interfered with his right to procedural due process is that, in order for him to comply with the conditions imposed on his removal permit and convert the second-floor kitchen into a bedroom, he would be forced to violate the State sanitary code's minimum space requirements for rooms used for sleeping purposes. The short answer is, the board's ruling does not

As easily disposed of, is the plaintiff's claim of a violation of fundamental rights protected by the Fourteenth Amendment concept of substantive due process. He asserts that the removal permit with conditions granted him by the board has impact upon his and his family's preferences regarding use of interior housing space for a bathroom and bedroom, and thus interferes with his fundamental right to exercise his choice in private, family matters. However, we view all the cases cited by the plaintiff as inapposite, dealing as they do with the critically different order of private and familial choices involved in the right to marry (*Zablocki* v. *Redhail*, 434 U.S. 374 [1978]; *Loving* v. *Virginia*, 388 U.S. 1 [1967]), the right to share living quarters with nonnuclear-family relatives (*Moore* v. *East Cleveland*, 431 U.S. 494 [1977]), and the right to procreate (*Skinner* v. *Oklahoma*, 316 U.S. 535 [1942]).

By contrast the right to use lawfully regulated property as one wishes has never been classified as a fundamental right, which can only be interfered with for a compelling governmental purpose. In fact, in upholding a rent control ordinance against constitutional attack, the United States Supreme Court expressly distinguished such an ordinance from the category of governmental intrusions necessitating stricter scrutiny. *Pennell* v. *San Jose*, 485 U.S. 1, 14 (1988). Because the rent control ordinance "does not burden a suspect class *or a fundamental interest*" (emphasis added), all the defendant city had to show was that the law was "rationally

---

require the plaintiff to turn his kitchen into a bedroom — it states only that he is allowed to "remove the kitchen fixtures [in the second-floor unit] so that he and his family might owner-occupy both units." Furthermore, even if the conditional permit did state that the kitchen would be used as a bedroom, this is expressly what the plaintiff asked for at the hearing. He failed to apprise the board that he wished to knock out one of the kitchen walls to expand it and make the new, larger space a bedroom, but rather stated he sought permission to "take the kitchen out and create another back-up bedroom," which permission was granted by the board. Because the plaintiff had every opportunity to present relevant evidence regarding his petition to the hearing officer, and did not do so, we decline to hear this objection. *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 125-126 (1985).

related to a legitimate state interest," not a compelling governmental interest, in order to meet the plaintiff's constitutional challenge under the equal protection clause of the Fourteenth Amendment. *Id.* We conclude that the board's action does not interfere with any Fourteenth Amendment due process rights, procedural or substantive, of the plaintiff.

Finally, the plaintiff asserts that the board's decision to grant him a removal permit with conditions is tantamount to a taking of his private property for public use without just compensation, contrary to his rights under the Fifth and Fourteenth Amendments. We disagree.

Consistent with the Constitution, the Commonwealth and its subdivisions may regulate private property in the public interest. *Moskow* v. *Commissioner of Envtl. Management*, 384 Mass. 530, 532 (1981). *Lovequist* v. *Conservation Comm'n of Dennis*, 379 Mass. 7, 19 (1979). The plaintiff does not dispute the fact that, as this court has held, the rent control ordinances serve a legitimate public purpose. *Flynn* v. *Cambridge*, 383 Mass. 152, 158-159, 161 (1981). Contrary to some of the plaintiff's arguments here, however, this court has expressly held the Cambridge removal ordinance lawfully advances the aims of rent control. *Id.* at 159. "If the power to control rents is to be anything more than an interim measure effective for only the short period needed to convert the entire rental housing stock, it must include by implication the power to make reasonable regulations governing removals from the rental housing market." *Id.* at 158. Insofar as we have concluded that the board's decision was within its discretion under the relevant ordinances, it cannot be said to be unrelated, and bear no "nexus," to the original, lawful purposes of the removal ordinance. Cf. *Nollan* v. *California Coastal Comm'n*, 483 U.S. 825, 836-837 (1987).

Therefore, the sole constitutional inquiry becomes whether, notwithstanding the legitimate character of the ordinances, "there has been such a deprivation of the practical uses of a landowner's property as to be the equivalent of a taking." *Moskow* v. *Commissioner of Envtl. Management, supra* at 532. Because "[g]overnment hardly could go on if to some

extent values incident to property could not be diminished without paying for every such change in the general law," *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 124 (1978), quoting *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 413 (1922), government actions for valid public purposes "may deprive an owner of a beneficial property use — even the most beneficial such use — without rendering the regulation an unconstitutional taking." *Moskow* v. *Commissioner of Envtl. Management, supra* at 533, quoting *Lovequist* v. *Conservation Comm'n of Dennis, supra* at 19. The courts have thus given special significance to two factors in assessing whether a governmental action amounts to a taking: the extent to which it strips the owner of "distinct investment-backed expectations," and the character of the governmental invasion. *Penn Cent. Transp. Co.* v. *New York City, supra. Moskow* v. *Commissioner of Envtl. Management, supra.* The focus in this regard is not the effect of the governmental restriction on particular segments of the owner's property, but on the parcel as a whole. *Penn Cent. Transp. Co.* v. *New York City, supra* at 130-131. *Moskow* v. *Commissioner of Envtl. Management, supra.*

Under these principles it is clear that the board's action with regard to the plaintiff's removal permit request did not amount to a taking of his property. First, the plaintiff purchased the four-family building years after the rent control and removal permit ordinances were in effect, and thus had no expectation that any renovation that resulted in combining apartments into a single unit for his family to occupy would be free from board overview and restriction under these ordinances. "[T]he government is not required to compensate an individual for denying him the right to use that which he has never owned." *Flynn* v. *Cambridge, supra* at 160. See *Loeterman* v. *Brookline*, 524 F. Supp. 1325, 1329 (D. Mass. 1981) (owners who purchased newly-converted condominium after effective date of condominium conversion ordinance precluding the eviction of existing tenants continuing to occupy the apartment had "no legitimate expectation of occupying the unit themselves"). Furthermore, the board's

restriction on the plaintiff's property does not deny him an economically viable and reasonable use of it: He may live there with his family, and continue to collect rents from two other tenants. The rent control ordinance permits him to apply for rent increases on those two units (a right the plaintiff acknowledged he has never invoked) in order that he may obtain "a fair net operating income from such units." St. 1976, c. 36, § 7 (a). *Flynn* v. *Cambridge, supra* at 161.

Secondly, the nature of the board's action was far from a physical invasion and occupation of his property, as the plaintiff characterizes it. Such action is much more likely to constitute a taking. *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 436, 441 (1982). *Penn Cent. Transp. Co.* v. *New York City, supra* at 124. Neither is this a case where the landlord was required to charge less than a reasonable rent in order to provide assistance to a tenant. See *Pennell* v. *San Jose, supra.* We hold that there was no taking of the plaintiff's property.

The judgment of the District Court is affirmed.

*So ordered.*