SUPERIOR COURT 
 
 RFF FAMILY PARTNERSHIP LP AND SAUGUS DEVELOPER LLC v. SHOPS AT SAUGUS LLC AND TOWN OF SAUGUS

 
 Docket:
 2184CV02747-BLS2
 
 
 Dates:
 January 27, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING THE MOTION FOR SUMMARY JUDGMENT BY THE TOWN OF SAUGUS
 
 

 Plaintiffs RFF Family Partnership LP (“RFF”) and Saugus Developer LLC (“Developer”) wanted Developer to build affordable housing on RFF’s property in Saugus, Massachusetts. To facilitate the project, Developer acquired an easement that would let vehicles and people travel between RFF’s property and Route 1 across land owned by Shops at Saugus LLC. But the easement was invalid because it was barred by a provision in a “Mitigation Covenant” that Shops had granted to the Town of Saugus years before.
RFF and Developer claim that the Town of Saugus made a regulatory taking of RFF’s property by allegedly forcing Shops to grant the Mitigation Covenant as a condition of obtaining Town Meeting approval to rezone Shops’ property, in order to prevent development of the abutting land later acquired by RFF.[1]
But Plaintiffs have failed to muster any evidence to support that contention. The Court will allow the Town’s motion for summary judgment in its favor because Plaintiffs cannot point to any evidence showing that the Town took final action—or did anything at all—to require Shops to grant, or to coerce it into granting, the challenged portion of this Covenant. Though Plaintiffs have shown that Shops offered the Mitigation Covenant in response to concerns raised by several Town Meeting members and a suggestion made by one person at a public meeting, those comments did not constitute government action and therefore cannot amount to a regulatory taking of property.
1. Factual and Procedural Background. When construed in the light most favorable to RFF and Developer, the summary judgment record and the
 
--------------------------------------------
 
[1] Although Developer did not own the property affected by the challenged portion of the Mitigation Covenant, Developer has standing to join in the regulatory taking claims because it alleges that its business was directly and adversely affected by the purported taking of RFF’s property. See Marchese v. Boston Revelopment Auth., 483 Mass. 149, 157–158 & 161–162 (2019).
 
                                                            -1-
 
allegations in Plaintiffs’ amended complaint show that the following facts are undisputed or that the Court must treat them as being undisputed for the purpose of deciding the Town’s summary judgment motion.[2]
In late 2006, Shops was seeking approval from a Special Town Meeting to rezone its property in Saugus, which has direct access to Route 1. Parts of the property were zoned as Single Family Residential (R-1) or Neighborhood Business (B-1). Shops was seeking to have those parts rezoned to High Rise Business and Industrial (B-2) to permit commercial development of the property as a shopping plaza.
At the initial Town Meeting on Shops’ rezoning application, several town meeting members had questions or expressed concerns about the volume of traffic on Route 1. Town Meeting voted to refer the application to the Planning Board for further discussion, so that the Board could make a non-binding recommendation to Town Meeting. This prompted Shops to propose an open public meeting to give all interested parties, whether Town Meeting members or not, a chance to raise concerns about the proposal. It appears that Shops wanted to understand all local concerns so it could try to address them.
At the public meeting, someone suggested that access to abutting properties from Shop’s parcel should be limited, as one way to help address the concern about growing traffic volumes on Route 1. Shops decided to propose the Mitigation Covenant to adopt this suggestion and to address three other issues that had been raised at the initial Town Meeting and the subsequent open meeting. Counsel for Shops drafted the Mitigation Covenant and sent it to Town Counsel, without discussing it with Town Counsel in advance.[3]
The Mitigation Covenant states that Shops “voluntarily” offered to agree to binding restrictions on the use of its property as specified in that document. Shops agreed in ¶ 1.D of this Covenant “that it shall not grant access to or egress from Lot A–34, as shown on Saugus Assessors’ Plan 1047 to or from [Shops’] Property to any third party.” Lot A-34 abuts Shops’ property, and has no direct
 
--------------------------------------------
 
[2]        The allegations in the amended complaint are binding on both Plaintiffs. See G.L. c. 231, § 87 (“In any civil action pleadings … shall bind the party marking them.”); Adiletto v. Brockton Cut Sole Corp., 322 Mass. 110, 112 (1947) (this statute provides that “facts admitted in pleadings” are “conclusive upon” the party making them).
[3] The facts summarized in the preceding two paragraphs are recounted in the deposition testimony of Shops’ counsel, Attorney Richard Magnan.
 
                                                            -2-
 
access to Route 1; as discussed below, this is the property now owned by RFF. The Covenant provided that it would become null and void if the proposed zoning amendment was not adopted by the Town Meeting.
Shops executed the Mitigation Covenant on November 13, 2006, and thereby granted to the Town the right to enforce the restrictions agreed to by Shops in the Covenant. The Town is not a party to this legal document.
Town Meeting then voted to approve Shops’ rezoning application. Town Counsel John Vasapolli testified (during his deposition in this case) that execution of the Mitigation Covenant by Shops was not a condition for obtaining rezoning, but that he believed Town Meeting would probably not have approved Shops’ rezoning application without it. Once its property was rezoned, Shops built and now operates a retail shopping center at that site.
When Shops executed the Mitigation Covenant in late 2006, Link Development LLC owned the abutting property known as Lot A–34. After Shops signed the Mitigation Covenant, RFF loaned $1.4 million to Link. RFF recorded a mortgage securing this loan in April 2007. RFF foreclosed after Link defaulted on this loan. RFF acquired title to Lot A–34 in June 2011.
In early 2020, RFF and Developer entered into a contract with Shops, under which Shops agreed to grant an easement providing unrestricted access across its land between RFF’s property and Route 1. Shops and Developer entered into a separate Easement Agreement in which Shops purported to grant this access.
The Court held, in a prior summary judgment decision in this case, that the purported easement granted by Shops to Developer was illusory because it was barred by the Mitigation Covenant, and that Shops had therefore breached its contractual obligation to grant the easement. Plaintiffs had asserted claims against Shop, which in turn asserted a counterclaim. RFF, Developer, and Shops reported last week that they have resolved their dispute and are filing a stipulation to dismiss with prejudice the claims against or by Shops.
2. Failure of Proof of any Regulatory Taking. RFF and Developer have asserted two regulatory taking claims against the Town.[4] Both claims are based
 
--------------------------------------------
 
[4] A regulatory taking “arises not from the acquisition of an interest in property  by the government, but rather from a regulation” or other government action “that severely limits the property’s use.” Blair v. Department of Conservation and Recreation, 457 Mass. 634, 641 (2010). “While most restrictions on the use of
<continued…>
 
                                                            -3-
 
on allegations that the Town “forced” and “required” Shops to grant the Mitigation Covenant “as a condition precedent to developing its land.” One of these causes of action asserts that alleged actions by the Town to force Shops to agree to the Covenant constitute a per se regulatory taking;[5] the other asserts that the same alleged actions constitute a regulatory taking under the so-called Penn Central factors.[6]
To succeed on these claims, Plaintiffs must prove they suffered economic loss because of governmental action by the Town, rather than voluntary conduct by Shops. See FBT Everett Realty, LLC v Massachusetts Gaming Comm’n, 489 Mass. 702, 713 (2022). In a case like this, where takings claims are based on allegations that the government “pressure[d] a third party to take action that diminishes the value of the plaintiff’s property, the government is responsible … for the economic impact of the third party’s action if the economic harm to the plaintiff ‘was direct and intended’ and ‘the government’s influence over the third party was coercive rather than merely persuasive.’ ” Id. at 713–714, quoting A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1154 (Fed. Cir. 2014).
 
--------------------------------------------
 
private property do not constitute a taking, when a regulation substantially restricts the owner’s use of the property, so that the regulation ‘goes too far,’ it may be deemed a regulatory taking of that property for a public use,” in which case the property owner is entitled to fair compensation for the rights taken from it. Id., quoting Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922).
[5] “Government regulatory actions may be deemed per se takings if a regulation causes a permanent physical invasion” of private property, “or if the regulation deprives a property owner of any viable economic use of the property.” Fitchburg Gas & Elec. Light Co. v. Department of Pub. Utils., 467 Mass. 768, 776 (2014) (internal citation omitted); accord Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015–1016 (1992).
[6] “To determine whether a government restriction on an owner’s use of property has effected a compensable taking where the restriction involves neither a physical invasion nor a complete deprivation of economically viable use,” courts must consider and balance three factors: “the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action.” FBT Everett Realty, LLC v Massachusetts Gaming Comm’n, 489 Mass. 702, 708 (2022), quoting Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2072 (2021). These are often referred to as the “Penn Central factors,” because they were first identified by the Supreme Court in Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). See FBT Everett, supra, at 708 & 711.
 
                                                            -4-
 
The Town is entitled to summary judgment because Plaintiffs have failed to muster any evidence that the Town forced, required, or coerced Shops to grant the provision in the 2006 Mitigation Covenant that bars Shops from granting an easement over its property to or from the abutting land now owned by RFF.
The entry of summary judgment is appropriate if, “viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.” Nelson v. Salem State College, 446 Mass. 525, 530 (2006), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). “The purpose of summary judgment is to decide cases where there are no issues of material fact without the needless expense and delay of a trial followed by a directed verdict.” Correllas v. Viveiros, 410 Mass. 314, 316 (1991).
“A nonmoving party’s failure to establish an essential element of her claim ‘renders all other facts immaterial’ and mandates summary judgment in favor of the moving party.” Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). “If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.” Kourouvacilis, supra, at 715, quoting Celotex Corp. v. Catret, 477 U.S. 317, 328 (1986) (White, J., concurring).
RFF and Developer recognize that they cannot prevail without showing that the Town compelled Shops to grant the easement restriction in the Mitigation Covenant. As noted above, Plaintiffs allege in their amended complaint that the Town forced or required Shops to enter into the Mitigation Covenant. Plaintiffs contend in their written opposition to the Town’s summary judgment motion that the Town “coerced the Shops to agree to the Mitigation Covenant by expressly conditioning approval of the Shops’ development on restricting its abutters[‘] access to Route 1.” And Plaintiffs asserted during oral argument on the Town’s summary judgment motion that the conduct constituting the alleged regulatory taking was not the Town’s ultimate invocation of the Mitigation Covenant, but instead was the Town’s alleged actions in purportedly requiring Shops to grant the Covenant.
But the evidence cited by RFF and Developer does not show that the Town compelled Shops to propose and then grant the Mitigation Covenant. Plaintiffs conceded at oral argument that the only evidence they presented to show that the Town purportedly required Shops to grant the Mitigation Covenant is
 
                                                            -5-
 
deposition testimony by Attorney Richard Magnan, who represented Shops in connection with its 2006 rezoning proposal. Mr. Magnan recounted that several town meeting members raisied concerns about Route 1 traffic at an initial Town Meeting about Shops’ rezoning application in 2006; he also testified that someone proposed at a subsequent public open meeting that access to abutting properties be limited. Attorney Magnan made clear that Shops voluntarily proposed the Mitigation Covenant to address the concerns raised by these individuals and adopt the suggestion made at the public meeting.
There is no evidence that Town Meeting or any Town board ever voted to require a covenant barring easement’s across Shops’ property, that Town Meeting voted to deny Shops’ rezoning proposal before Shops opted to grant the Mitigation Covenant, or that Town Meeting or any other part of Town government ever took any other kind of action to require the Mitigation Covenant or coerce Shops into covenanting not to grant any future easement providing access to the land now owned by RFF.
In evaluating whether there has been a regulatory taking, a court must consider only the character and impact of a final action by the relevant governmental decisionmaker. “A regulatory takings case becomes ripe for adjudication only after … the responsible government entity has reached ‘a final decision regarding the application of the regulation to the property at issue’ ” (cleaned up). Giovanella v. Conservation Comm’n of Ashland, 447 Mass. 720, 723 (2006), quoting Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985).
In other words, there must have been a final decision by “the government entity charged with implementing the regulations” or statute at issue. Commonwealth v. Blair, 60 Mass. App. Ct. 741, 746, rev. denied, 442 Mass. 1101 (2004), quoting Daddario v. Cape Cod Comm’n, 425 Mass. 411, 414 (1997), quoting in turn Williams County, supra. Government action that falls short of “a final and authoritative determination” as to the nature and scope of legally permitted use of property cannot constitute a regulatory taking of the property. Daddario, quoting MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 348 (1986).[7]
 
--------------------------------------------
 
[7] “[W]hile there is a narrow futility exception to the requirement for a final decision before a takings claim is ripe, ‘to come within that exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so).’ ” Daddario v. Cape Cod Comm’n, 56 Mass. App. Ct. 764, 770 (2002), quoting Gilbert v. Cambridge, 932 F.2d 61 (1st Cir. 1991).
 
                                                            -6-
 
It follows that if there has been no affirmative act by the government at all, then the government cannot possibly be liable on a regulatory taking theory. See Love Terminal Partners, L.P. v. United States, 889 F.3d 1331, 1341–1342 (Fed. Cir. 2018); St. Bernard Parish Government v. United States, 887 F.3d 1354, 1360–1361 (Fed. Cir. 2018); accord Farris v. District of Columbia, 257 A.3d 509, 518–519 (D.C. Ct. App. 2021) (following St. Bernard Parish).[8]
Comments by a few Town Meeting members is not final governmental action; indeed it is not government action at all. A Town Meeting can act only by taking a formal vote of its members. See generally G.L. c. 43A, § 5. A vote by two- thirds of participating Town Meeting members is required to approve rezoning proposals. See G.L. c. 40A, § 5. This means that a rezoning proposal has been rejected only if Town Meeting takes a formal vote and more than one-third of the members vote to disapprove the proposal.
Since questions or comments by a few Town Meeting members do not constitute final governmental action, they cannot bring about a regulatory taking. Though the concerns by several Town Meeting members and a suggestion made at a separate open public meeting may have given Shops the idea to offer the Mitigation Covenant, and to execute that Covenant before seeking a final Town Meeting vote, those comments had no legal effect because they did not constitute a final decision or other action by the special Town Meeting. Cf. Emmert v. Clackamas County, 765 F.App'x 229, 230 (9th Cir. 2019) (allegation that County staff advised potential buyers that plaintiff’s property could not be purchased because a freeway was going to be built through it did not state regulatory taking claim because it did not plausibly suggest that County reached final decision to preclude private sale of the property). These comments were therefore “not a form of coercive government action at all, but at most a form of ‘persuasion,’ ” which cannot constitute a regulatory taking.
 
--------------------------------------------
 
[8] The Supreme Judicial Court has followed Federal precedent when examining regulatory and other takings claims brought under art. 10 of the Massachusetts Declaration of Rights. See Fitchburg Gas & Elec. Light Co. v. Department of Pub. Utils., 467 Mass. 768, 775 n.8 (2014); Blair v. Department of Conservation and Recreation, 457 Mass. 634, 642–644 (2010). Since Plaintiffs do not argue that their regulatory takings claims might succeed under article 10 even if it fails under the United States Constitution, there is no need to explore whether in some circumstances different standards may apply under Massachusetts law. See Steinbergh v. City of Cambridge, 413 Mass. 736, 738 (1992); accord FBT Everett, 489 Mass. at 709 n.4.
 
                                                            -7-
 
Taylor v. United States, 959 F.3d 1081, 1089 (Fed. Cir. 2020) (advice by Air Force officials that Federal Aviation Administration would likely not issue “no hazard” determination, which was required to erect wind turbines on plaintiff’s land, “falls into no category of governmental action we have recognized as supported a regulatory-taking claim”); accord  FBT  Everett,  489 Mass. at 713–714.
Since “[a] final decision is an essential element of a regulatory taking claim,” and it is undisputed that Town Meeting did not make any final decision before Shops agreed to grant the Mitigation Covenant, the Town is entitled to summary judgment in its favor on Plaintiffs’ regulatory takings claims. See Blair, 60 Mass. App. Ct. 745–749 (affirming summary judgment on ground that regulatory taking claim was not ripe because property owner did not seek variance from application of Watershed Protect Act regulations and thus did not obtain a final agency decision).
In addition to their claims seeking compensation for the alleg
ed regulatory taking, RFF and Developer also seek a declaration as to whether the Mitigation Covenant is lawful and enforceable. For the reasons discussed above, the Town is entitled to a declaration that the Covenant is lawful and enforceable.
ORDERS
The motion for summary judgment by the Town of Saugus is allowed. The final trial conference scheduled for March 13, 2025, and the trial scheduled to begin on March 31, 2025, are therefore cancelled.
Consistent with this decision, prior rulings in this case, and the stipulation dismissing the claims and counterclaims between Plaintiffs and Shops at Saugus LLC, final judgment shall enter (1) declaring that the Mitigation Covenant granted by Shops at Saugus, LLC, to the Town of Saugus on November 13, 2006, is lawful, valid, and enforceable, (2) providing that Plaintiffs shall take nothing from the Town of Saugus, and (3) dismissing counts I to IX of Plaintiffs’ amended complaint with prejudice.